Mary Melissa CHAVERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–98–00568–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 22, 1999.

Rehearing Overruled May 21, 1999.

Paul Johnson, Angleton, for Appellant.

Jerome Aldrich, David Bosserman, Angleton, for Appellee.

Panel consists of Justices COHEN, HEDGES, and NUCHIA.

## OPINION

SAM NUCHIA, Justice.

A jury found appellant guilty of five counts alleging that she caused bodily injury to a child by her reckless and criminally negligent acts or omissions, and two counts alleging that she caused serious bodily injury to a child by her reckless and criminally negligent acts or omissions. The jury assessed appellant two years confinement and a $10,000 fine for each of the five counts involving bodily injury to a child, and ten years confinement and a $10,000 fine for each of the two counts involving serious bodily injury to a child, all to be probated. We affirm.

## BACKGROUND

At trial, appellant testified that on October 28, 1996 she was driving a school bus down County Road 341, a very narrow road, on her afternoon route. As she was driving down the road, she noticed a dark truck further down the road, driving toward her, approximately one-third in her lane. Appellant checked the children in the mirrors, and then when she looked back at the road, the truck was right there, still one-third of the way in her lane. In order to avoid a head-on collision with the truck, appellant testified she moved the bus over to the right and onto the shoulder. Appellant said as she attempted to re-enter the roadway off the shoulder, the steering wheel jerked out of her hands. Appellant lost control of the bus, and the bus turned over and landed on its side in the ditch.

James Caskey, who lived near the site of the bus accident, and Olivia Freeman, who saw the bus fall into the ditch, both testified they did not see any other vehicles in the area at the time of the accident. One of the children on the bus, Devin Garza, testified that he was looking forward and he did not see any other vehicles at the time of the accident. Kalese Kelly, a high school student who was driving home from school, testified she saw a dark truck turn down County Road 341 not long before she saw the bus in the ditch.

Trooper Walker testified as an accident reconstruction expert. He said that using the Vericon 2000, he ran three skid tests to determine the coefficient of friction on the

roadway surface. Walker testified that he then measured the yaw marks at the scene to determine the speed of the vehicle. Walker testified that he took fifty percent of the coefficient of drag to calculate the speed of the bus using the Vericon 2000. Walker determined the bus, while driving on the shoulder, was going 56 miles per hour. He testified that when the bus reentered the roadway, it was going 41 miles per hour. The posted speed limit on County Road 341 is 35 miles per hour.

## DISCUSSION

### *Necessity Instruction*

■ In issue one, appellant asserts the trial court erred by not including her requested instruction to the jury on the defense of necessity.

Section 9.22 of the Texas Penal Code defines necessity as follows:

Conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX. PENAL CODE ANN. § 9.22 (Vernon 1994).

■ "[A] defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief. The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge." *Thomas v. State*, 678 S.W.2d 82, 84 (Tex. Crim.App.1984).

Section 6.03(c) and (d) define reckless and criminally negligent conduct as:

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards *a substantial and unjustifiable risk* that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(c) (Vernon 1994) (emphasis added).

A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of *a substantial and unjustifiable risk* that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(d) (Vernon 1994) (emphasis added).

■ The State asserts that appellant was reckless and criminally negligent in that she was speeding as she drove down County Road 341, and that as a result she drove off the shoulder of the roadway and into a ditch. Appellant, however, claims that she drove onto the shoulder of the roadway to avoid a head-on collision with a truck. Thus, appellant claims she intentionally drove into the ditch for a good reason. This is an alternative theory of the case, raising a defensive issue denying appellant was reckless or criminally negligent (i.e., that she consciously disregarded a substantial and unjustifiable risk by her actions). By definition, when unjustifiable

is one of the elements of a crime, a defendant cannot raise a justification defense.

■ The denial of a defendant's requested instruction is not error when the requested instruction is only an affirmative submission of a defensive issue which merely denies the existence of an essential element of the State's case. *See Thomas v. State,* 662 S.W.2d 677, 679 (Tex.App.— Dallas 1983), *aff'd,* 678 S.W.2d 82 (Tex. Crim.App.1984) (quoting *Green v. State,* 566 S.W.2d 578, 584 (Tex.Crim.App.1978)). We conclude that the trial court did not err in not instructing the jury on the defense of necessity.

We overrule appellant's first issue.

### Expert Testimony

■ In issue two, appellant asserts the trial court erred in overruling her objection to the expert opinion of Trooper Walker regarding the speed of the school bus because the opinion was unreliable, not based on sound scientific principles or techniques, and was based on a flawed scientific methodology. Specifically, appellant claims that taking fifty percent of the coefficient of drag, because two tires were not on the road, is not properly based upon the principles of the field of accident reconstruction.

■ We review the trial court's decision to allow the expert testimony into evidence for abuse of discretion. *See Kelly v. State,* 824 S.W.2d 568, 574 (Tex.Crim.App.1992).

Rule 702 of the Texas Rules of Evidence provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Tex.R. Evid. 702.

■ The Texas Court of Criminal Appeals has held that Rule 702 of the Rules of Evidence requires the satisfaction of a three-part test before expert testimony is admissible. *Nenno v. State,* 970 S.W.2d 549, 560 (Tex.Crim.App.1998). The court stated that the appropriate questions to be asked when a court is determining the reliability of evidence from fields which are based primarily upon experience and training are less rigorous than those involving "hard sciences." *Id.* at 561. The appropriate questions are: (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field. *Id.*

The State asserts that there are no criminal cases in Texas applying Rule 702 to accident reconstruction cases. Our research similarly has found no criminal cases on point. However, the Corpus Christi Court of Appeals has discussed the admissibility of an officer's testimony as to the speed of a vehicle in a civil case. *Trailways, Inc. v. Clark,* 794 S.W.2d 479 (Tex.App.—Corpus Christi 1990, writ denied). In *Trailways,* the court held that it is within the trial court's discretion to allow an officer, once qualified, to testify regarding his estimate of the speed of a vehicle based on skid marks at the scene of an accident. *Id.* at 482–83.

In the present case, appellant does not dispute the use of the Vericon 2000 in determining the speed of the bus; rather, she disputes the use of fifty percent of the coefficient of drag as an accepted scientific principle. Walker testified he was certified with the Texas Department of Public Safety on the Vericon 2000, and that he understands the underlying scientific theory behind the device. He further testified that the device is widely accepted and is the preferred method of determining the coefficient of friction among accident reconstructionists. Walker testified that the technique used in applying the Vericon 2000 was valid, and was properly applied in this case. Additionally, he testified the yaw mark formula he used is widely ac-

cepted by accident reconstructionists, and the underlying scientific theory behind the yaw marks speed calculation formula is valid. Walker testified that he used only fifty percent of the coefficient of drag because only two of the bus's wheels were on the road when they made the yaw mark. Walker stated that although there is no scientific formula for using only fifty percent, he consulted several more experienced individuals in the field of accident reconstruction as to how best to make a determination of the bus's speed with the yaw mark at the scene, and they agreed on this technique.[1]

We hold that the trial court did not abuse its discretion in concluding that Walker properly utilized the principles involved in the field of accident reconstruction and allowing him to give his expert opinion as to the speed of the bus based on the yaw marks at the scene.

We overrule appellant's second issue.

### Jury Argument

■ In issue three, appellant asserts the trial court erred in overruling her objection to the prosecutor's jury argument, which she claims was improper because it shifted the burden of proof to appellant. Specifically, appellant complains the prosecutor improperly argued that she failed to call witnesses to testify that a black truck was involved in the wreck.

The prosecutor's argument appellant is referring to is as follows:

> Prosecutor: James Caskey, one of the first people that were on the bus, heard her [appellant] say I can't believe I ran off the road. Not that a black truck ran me off the road, but I can't believe I ran off the road. Later she told Trooper Peel that this black truck ran her off the road. They need a reason to run off the road. She needed a reason to run off the road.

She came up with a black truck story. Two eyewitnesses to this case did not see a black truck, did not see any other vehicles on the road. Ladies and gentlemen, there was no other vehicle involved in this wreck. *If there was another person or if there was anyone that would say, anyone at all other than the defendant, that there was a black truck involved in this wreck, they would have brought them in here and they would have had them testify for you.*

> Defense: Your Honor, burden of proof is on the State. We don't have to bring any evidence. He's shifting the burden.

> Court: Overruled. Go ahead.

(Emphasis added.)

■ This is not a case in which appellant is objecting that the prosecutor's jury argument was a comment on her failure to testify, because in this case, appellant did testify. When a prosecutor's jury argument can reasonably be construed to refer to appellant's failure to produce evidence other than her own testimony, the comment is not improper. *Patrick v. State*, 906 S.W.2d 481, 490–91 (Tex.Crim.App. 1995) (holding the prosecutor's argument *"If it was there, they can bring it to you,"* was not an improper jury argument); *see also Thomas v. State*, 638 S.W.2d 481, 483 (Tex.Crim.App.1982) (stating that the prosecutor may comment on the defendant's failure to present any witnesses or evidence on his behalf). We conclude the prosecutor's argument was not improper.

We overrule appellant's third issue.

We affirm the trial court's judgment.

---

1. Walker testified he called Sergeant Seale, who is the head of the State accident reconstruction team, Trooper Shipley, who had just attended Texas A & M University's commercial vehicle accident reconstruction school, and Texas Ranger Denning, who is an engineer and is well-known in the area of accident reconstruction, for advice to determine how to calculate the bus's speed.