Dwayne Lewis GOODRICH, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 05–03–01720–CR, 05–03–01721–CR.

Court of Appeals of Texas,
Dallas.

Jan. 6, 2005.

Rehearing Overruled Feb. 22, 2005.

Gerald H. Goldstein, San Antonio, for Appellant.

William T. (Bill) Hill, Jr., Karen R. Wise, Assistant District Attorney, Dallas, for State.

Before Justices MORRIS, WHITTINGTON, and MAZZANT.

## OPINION

MAZZANT, Justice.

Dwayne Lewis Goodrich appeals his convictions for criminally negligent homicide. After the jury found appellant guilty, it assessed his punishment at seven-and-one-half years' imprisonment and a $10,000 fine in each case. Appellant brings eight points of error contending: (a) the trial court erred by not granting appellant's motions to quash the indictments; (b) the evidence is factually insufficient to support his convictions; (c) the trial court erred by denying appellant's request to charge the jury on the defenses of necessity and mistake of fact; (d) the trial court erred by determining appellant was not entitled to jury-recommended community supervision for criminally negligent homicide with a deadly weapon; and (e) the trial court's

determination of appellant's ineligibility for community supervision deprived appellant of the effective assistance of counsel. We affirm the trial court's judgments.

## BACKGROUND

At about 2:00 a.m. on January 14, 2003, a man was driving his black Mitsubishi vehicle northbound on I–35 in Dallas when he drove into the back of an eighteen-wheeler truck. The Mitsubishi bounced off the truck's trailer, went left across the northbound lanes, collided with the center divider, and stopped in the far left lane of the northbound side of the freeway about nine feet from the center divider. The Mitsubishi caught on fire. The truck pulled over to the right hand side of the freeway and stopped. Because of the accident, traffic in all five lanes slowed to a crawl. Three men got out of their cars to help the Mitsubishi driver out of his burning car. As they stood between the Mitsubishi and the center divider, appellant, driving a BMW, tried to drive between the Mitsubishi and the center divider. The BMW struck the Mitsubishi and hit the men helping the Mitsubishi driver. Two of the men were killed and the third was seriously injured. Appellant did not stop. The next day, appellant turned himself in to the police.

Linette Crall testified she was driving her Nissan Pathfinder sport-utility vehicle north on I–35 at about 65 m.p.h. in the second lane from the right, and she observed the accident scene and blocked lanes ahead of her as she went over the overpass at Walnut Hill. Crall began braking, and she noticed appellant's BMW approaching her from behind at over 100 m.p.h. Crall testified that as she decelerated, appellant drove up close behind her, traveling at least twice her speed, and then went around her to her left about 60 to 70 feet from the accident scene. After appellant passed her, Crall also moved to the left to avoid debris in the road and to help the driver of the Mitsubishi. Crall saw appellant strike the Mitsubishi, and she stopped her Nissan behind the Mitsubishi.

An accident reconstruction expert estimated from the conditions of the accident scene that appellant was going between 54 and 80 m.p.h. when he struck the men helping the Mitsubishi driver.

Appellant testified he was driving north on I–35 at about 75 m.p.h. in the second lane from the right. After he crested the overpass at Walnut Hill, appellant saw Crall's SUV in front of him. Although appellant testified he had excellent vision, he testified he did not see the accident scene. Appellant testified he stayed behind the SUV as it slowed from 60 m.p.h., and he testified he could not see around the SUV. Suddenly, the SUV braked hard and swerved to the left; appellant saw brake lights to his right, so he also swerved to the left. Appellant found himself behind the Mitsubishi. Appellant realized the Mitsubishi was not moving and that he could only try to pass between the Mitsubishi and the concrete median. Appellant looked at the concrete wall to his left as he passed through the gap. Appellant testified he never saw the people he hit. Appellant knew he struck something and at first thought it was debris. However, after a few seconds, appellant realized something terrible had happened, and he panicked and drove home.

## MOTIONS TO QUASH

In his seventh and eighth points of error, appellant contends the trial court erred by denying appellant's motions to quash the indictments. The sufficiency of an indictment is a question of law. *State v. Moff*, No. 458–03, 2004 WL 2248097, at * 2 (Tex.Crim.App. Oct.6, 2004). When the resolution of a question of law does not

turn on an evaluation of the credibility and demeanor of a witness, then the trial court is not in a better position to make the determination, and appellate courts should conduct a de novo review of the issue. *Id.;* *see Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The trial court's decision in this case was based on appellant's motions to quash and the argument of counsel. Accordingly, we conduct a de novo review of the trial court's ruling. *See Moff*, 2004 WL 2248097, at * 2.

Article 21.11 of the code of criminal procedure states that an indictment is sufficient if it "charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged." TEX. CODE CRIM. PROC. ANN. art. 21.11 (Vernon 1989). Article 21.15 requires that an indictment alleging recklessness "must allege with reasonable certainty, the act or acts relied upon to constitute recklessness." *Id.* art. 21.15. The indictments allege appellant,

> did then and there recklessly cause the death of an individual, . . . hereinafter called complainant, to wit, while then and there operating and driving a motor vehicle, a deadly weapon,
>
>> did drive said motor vehicle at a high rate of speed, and at a speed greater than was reasonable and prudent under the circumstances then existing,
>>
>> and did fail to control the speed of said motor vehicle,
>>
>> and did fail to maintain said motor vehicle in a single lane of traffic,
>>
>> and did fail to maintain proper lookout,
>>
>> and did fail to attend to existing road conditions,

>> and did fail to take proper evasive action to avoid striking said complainant who was situated on and near the roadway on which said defendant was operating and driving said motor vehicle, a deadly weapon,
>
> thereby causing said defendant to strike said complainant with defendant's motor vehicle, a deadly weapon, which said defendant was then and there operating and driving
>
> against the peace and dignity of the State.

Appellant argues that the manners and means alleged of committing these offenses "were not of sufficient detail to extent [sic] notice to the Appellant of the offense." In a motion to quash, appellant asserted that the allegation "did drive said motor vehicle at a high rate of speed, and at a speed greater than was reasonable and prudent under the circumstances then existing" did not allege that the speed caused him to strike the complainant. Appellant's argument lacks merit, however, because the last paragraph alleges that all the manners and means "thereby caus[ed] said defendant to strike said complainant."

Appellant also asserts the alleged manners and means failed to allege an offense because they did not put appellant on notice of what constitutes a "proper lookout" or what "attend to existing road conditions" and "proper evasive action" mean or constitute. The indictment must allege with "reasonable certainty" the acts relied upon to constitute recklessness; this indictment does so. *See Stewart v. State*, 70 S.W.3d 309, 314 (Tex.App.-Waco 2002, pet. ref'd) (indictment sufficiently charged recklessness by "failing to keep a proper lookout for other vehicles he was approaching," "failing to keep his vehicle under proper control," etc.).

Appellant argues on appeal that the allegations of recklessness are insufficient be-

cause some of the allegations are mutually exclusive, namely, the allegations of failure to maintain a single lane of traffic and failure to take evasive action. Objections to defects in an indictment must be raised before trial or they are waived. TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon Supp.2004–05); *Sanchez v. State,* 120 S.W.3d 359, 366 (Tex.Crim.App.2003). Appellant did not raise this objection until after his conviction; accordingly, the objection is waived.

We hold the trial court did not err by denying appellant's motions to quash the indictments. We overrule appellant's seventh and eighth points of error.

## SUFFICIENCY OF THE EVIDENCE

■■■ In his fifth and sixth points of error, appellant contends the evidence is factually insufficient to support his convictions. In determining the factual sufficiency of the evidence, we view all of the evidence in a neutral light and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Zuniga v. State,* 144 S.W.3d 477, 484 (Tex. Crim.App.2004). To make this determination, we consider whether the evidence of appellant's guilt, taken alone, is too weak to support the finding of guilt beyond a reasonable doubt, that is, the verdict is clearly wrong and manifestly unjust, or the evidence contrary to the verdict is so strong that the beyond-a-reasonable-doubt standard could not have been met. *Id.* at 484–85; *Ross v. State,* 133 S.W.3d 618, 620 (Tex.Crim.App.2004). Our evaluation of

the sufficiency of the evidence must not substantially intrude upon the jury's role as the sole judge of the weight and credibility of the evidence. *Johnson v. State,* 23 S.W.3d 1, 7 (Tex.Crim.App.2000).

Appellant argues the evidence is factually insufficient because his version of events is the more logical. We disagree. Appellant's version of events is that he was not criminally negligent[1] because he was unaware of the accident scene until he was 60 to 70 feet away from it, did not have time to stop, and was taking evasive measures when he unexpectedly ran into the three men, killing two of them. Appellant's asserted lack of awareness of the accident scene was that despite the fact he had excellent vision, he could not see, at 2:00 a.m., the brake lights from the cars stopped ahead in all five lanes of the freeway or the burning Mitsubishi that all the other drivers on the road saw. Appellant's theory also depends on Crall's SUV blocking his vision so that he could not see the accident scene until she swerved just in front of the accident scene. However, appellant's version of events is contrary to his own testimony that his vision was not blocked by Crall's SUV as he crested the Walnut Hill overpass, which was the point from which the other drivers observed the traffic problems and burning car 2479 feet ahead. The testimony of the other witnesses showed appellant should have had an unobstructed view of the accident scene from the Walnut Hill overpass, yet he could not explain why he did not observe the stopped traffic and burning car. If

1. The penal code defines criminal negligence as follows:

A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a

nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PEN. CODE ANN. § 6.03(d) (Vernon 2003).

appellant had observed the stopped traffic from the Walnut Hill overpass, the evidence shows the BMW's brakes could have stopped the BMW from a speed in excess of 100 m.p.h. well before he reached the accident scene.

Appellant also asserts his lack of criminal negligence is shown by his application of his brakes. A BMW technician examined appellant's vehicle and determined the brakes were applied hard enough to engage the ABS system at about 50 m.p.h. five miles before the car came to rest. However, appellant testified he drove the car home after the accident and that his house was "ten to thirteen, fourteen miles" from the accident location. Thus, the hard application of brakes about which the BMW technician testified had to have occurred five to nine miles past the accident scene.

After viewing all the evidence in a neutral light, we conclude the jurors could rationally find beyond a reasonable doubt from the evidence that appellant, by criminal negligence, caused the complainants' deaths while operating a motor vehicle and "did drive said motor vehicle ... at a speed greater than was reasonable and prudent under the circumstances then existing, and did fail to control the speed of said motor vehicle, ... and did fail to maintain proper lookout, and did fail to attend to proper road conditions ...." Reaching any other conclusion would require us to substantially intrude upon the jury's role as the sole judge of the weight and credibility of the evidence, which we must not do. See Johnson, 23 S.W.3d at 7. We overrule appellant's fifth and sixth points of error.

### JURY CHARGE

In his third point of error, appellant contends the trial court erred by not submitting appellant's requested jury instruction on the justification defense of necessity. See TEX. PEN. CODE ANN. § 9.22 (Vernon 2003). The trial court charged the jury on the offenses of manslaughter and criminally negligent homicide. Both manslaughter, with its reckless mental state, and criminally negligent homicide, with its criminal negligence mental state, have as one of their elements the requirement that the risk that the result will occur be "unjustifiable." Id. § 6.03(c), (d). The trial court does not abuse its discretion when it refuses to submit an instruction on a defensive issue that merely denies the existence of an essential element of the State's case. Chavers v. State, 991 S.W.2d 457, 460 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). Therefore, "[b]y definition, when unjustifiable is one of the elements of a crime, a defendant cannot raise a justification defense." Id. at 459–60. Because "unjustifiable" was an element of both submitted offenses, the trial court did not err in not submitting appellant's requested justification defense of necessity. We overrule appellant's third point of error.

In his fourth point of error, appellant contends the trial court erred by denying his requested instruction on the defense of mistake of fact. See TEX. PEN. CODE ANN. § 8.02 (Vernon 2003). When the trial court presented the charge to the parties for their objections, appellant presented extensive argument on why the necessity defense should be presented. On the mistake of fact defense, appellant's objection in the record consisted of the following: "I would also request a mistake of fact charge ...." Appellant did not, however, specify which fact was mistaken. The trial court denied appellant's request. When requesting an instruction on the defense of mistake of fact, the party must specify the fact alleged to have been mistaken. Williams v. State, 930 S.W.2d 898,

903 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd); *Hefner v. State,* 735 S.W.2d 608, 619–20 (Tex.App.-Dallas 1987, pet. ref'd), *abrogated on other grounds by Campbell v. State,* 5 S.W.3d 693 (Tex.Crim. App.1999). We conclude appellant's request, which fails to specify the allegedly mistaken fact, is too general to preserve error. *See Williams,* 930 S.W.2d at 903. Absent a proper request, the trial court does not err by failing to instruct the jury on the defense of mistake of fact. *Posey v. State,* 966 S.W.2d 57, 62 (Tex.Crim.App. 1998). We overrule appellant's fourth point of error.

## COMMUNITY SUPERVISION

■■■ In his first point of error, appellant contends the trial court erred at the punishment phase by not instructing the jurors that they could recommend appellant be placed on community supervision. The imposition of community supervision is governed by article 42.12 of the code of criminal procedure. *See generally* TEX. CODE CRIM. PROC. ANN. art. 42.12 (Vernon Supp.2004–05).

Criminally negligent homicide is a state jail felony. TEX. PEN. CODE ANN. § 19.05(b) (Vernon 2003). Under section 12.35(a) of the penal code, a state jail felony is punished by confinement in a state jail for 180 days to two years and a fine of up to $10,000. *Id.* § 12.35(a). When it is shown that a deadly weapon was used or exhibited in the commission of or flight from the offense, then the state jail felony is punished as a third degree felony. *Id.* § 12.35(c)(1). Third degree felonies are punished by two to ten years' imprisonment and a fine of up to $10,000. *Id.* § 12.34. In this case, at the guilt phase, the jury found appellant used or exhibited a deadly weapon; thus, under section 12.35(c)(1), the punishment range

for this offense was that of a third degree felony.

Sections 3 and 4 of article 42.12 contain the general provisions for when the judge may order and the jury may recommend community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 3, 4. Both of these sections except from their provisions defendants sentenced under section 12.35 of the penal code. *Id.* art. 42.12, §§ 3(e)(2), 4(d)(2). In this case, appellant was sentenced under penal code section 12.35(c); thus, he cannot rely on the general provisions for community supervision.

The right to community supervision for defendants convicted of state jail felonies is governed by section 15 of article 42.12. Section 15(a) requires the trial court to place a defendant on community supervision for certain offenses punishable under penal code section 12.35(a), and it permits the trial court to place a defendant on community supervision for all other offenses punishable under section 12.35(a). *Id.* § 15(a)(1), (2). Article 42.12 contains no provision allowing the jury to recommend community supervision for state jail felonies. *See Hookie v. State,* 136 S.W.3d 671, 678–79 (Tex.App.-Texarkana 2004, no pet.). Nor does it allow the judge to order community supervision for offenses, like appellant's, punishable under penal code section 12.35(c). Accordingly, we conclude the code of criminal procedure does not provide community supervision for a defendant convicted of a state jail felony punishable under section 12.35(c).

Appellant argues this interpretation is incorrect because, under article 12.35(c), his conviction was for a third degree felony. We disagree. Appellant was "adjudged guilty" (i.e., convicted) of a state jail felony. *See* TEX. PEN. CODE ANN. § 12.35(c)(1). That the range of punishment for this state jail felony is that of a

third degree felony does not change the fact appellant was convicted of a state jail felony.

Appellant also argues this interpretation is contrary to the wording of article 42.12, section 4(d)(2), which excludes from jury-recommended community supervision defendants "sentenced to serve a term of *confinement.*" TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(d)(2) (emphasis added). Under the penal code, punishment for first, second, and third degree felonies is by "imprisonment in the institutional division," and punishment for state jail felonies and class A and B misdemeanors is by "confinement in jail" or "confinement in a state jail." *Compare* TEX. PEN. CODE ANN. §§ 12.32–.34 (Vernon 2003) *with id.* §§ 12.21, .22, .35. Appellant asserts he was sentenced under the penal code to serve a term of imprisonment, not confinement. *See id.* § 12.34(a) (punishment for third degree felony is "*imprisonment* in the institutional division" (emphasis added)). Thus, appellant argues, section 4(d)(2) does not exclude him from jury-recommended community supervision. However, even if appellant were correct that the terms "imprisonment" and "confinement" as used in section 4 of article 42.12 should be given their restricted meanings under chapter 12 of the penal code, he would not be eligible for jury-recommended community supervision. Article 42.12, section 4(a) authorizes "[a] jury that imposes *confinement* as punishment for an offense" to recommend community supervision. TEX. CODE CRIM. PROC. ANN. art. 42.12, § 4(a) (emphasis added). Section 4 contains no similar provision authorizing a jury to recommend community supervision when it imposes "imprisonment" as punishment. Because, under appellant's interpretation of the words "confinement" and "imprisonment," he was "punished by imprisonment," not confinement, he would not be eligible for jury-recommended community supervision.[2]

Appellant also argues the trial court's interpretation of article 42.12 should be rejected because it leads to an absurd result in that a jury may recommend community supervision for murder and manslaughter but not criminally negligent homicide. Likewise, under this interpretation, the trial court may order community supervision for a person convicted of criminally negligent homicide but not criminally negligent homicide with a deadly weapon. We disagree that this interpretation is absurd. At least one other court of appeals has held that not permitting juries to recommend community supervision for state jail felonies is not absurd and has a rational basis. *See Hookie*, 136 S.W.3d at 679. Also, the legislature's singling out section 12.35(c) offenses from eligibility for post-conviction community supervision is just as rational as the legislature's excluding driving-while-intoxicated offenses from deferred adjudication, a provision applicable to almost every other offense under cer-

---

**2.** Whether article 42.12, section 4(a) limits a jury's authority to recommend community supervision to offenses punished as misdemeanors or state jail felonies is not before us, and we make no holding on that issue.

Throughout much of article 42.12, the legislature appears to have carefully distinguished between "confinement" and "imprisonment." *See, e.g.,* TEX. CODE CRIM. PROC. ANN. art. 42.12, §§ 2(B), 6(a), 7(a). Section 4, however, is an exception. As noted above, strict application in section 4 of the term "confinement" to punishment in jail or a state jail would prohibit jury-recommended community supervision for first, second, and third degree felonies. That cannot have been the intent of the legislature because, if it were, section 4(d)(1)'s exclusion from jury-recommended community supervision for defendants "sentenced to a term of imprisonment that exceeds 10 years" would be rendered meaningless. *See id.* art. 42.12, § 4(d)(1).

tain conditions, including criminally negligent homicide. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 5.

We conclude the trial court did not err in refusing to charge the jury that it could recommend appellant be placed on community supervision. We overrule appellant's first point of error.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his second point of error, appellant contends he did not receive effective assistance of counsel. To prevail on a claim of ineffectiveness of counsel at trial, an appellant must establish: (1) trial counsel's representation fell below an objective standard of reasonableness in that counsel made errors so serious that counsel was not functioning as the reasonably effective counsel guaranteed by the state and federal constitutions; and (2) a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53, 55 (1986).

We are given further aid in judging the first prong of the *Strickland–Hernandez* test:

> A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. ·

*Strickland,* 466 U.S. at 690, 104 S.Ct. 2052; *Hernandez,* 726 S.W.2d at 55. Any allegation of ineffectiveness must be firmly founded in the record, and the record must

affirmatively demonstrate the alleged ineffectiveness. *Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999). Judicial scrutiny of counsel's performance must be highly deferential; a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Thus, an appellant faces the onerous burden of overcoming a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689–90, 104 S.Ct. 2052; *see also Rylander v. State,* 101 S.W.3d 107, 110 (Tex.Crim.App.2003).

At the hearing on the motion for new trial, appellant's trial counsel testified he prepared for trial and conducted the guilt phase of the trial based on his belief that appellant was eligible for community supervision, both for the charged offense of manslaughter as well as for the lesser included offense of criminally negligent homicide. Counsel testified that his strategic decisions, including jury selection, evidence presentation, and objections to the charge, were based on his misunderstanding of appellant's eligibility for community supervision. Counsel testified his decisions on these matters might have been different had he known community supervision was not available for criminally negligent homicide with a deadly weapon and if his client had indicated they should take a different tack. Later in his testimony, counsel testified, "in hindsight, that not being the law, we would have done things differently."

Although counsel testified he might have or would have proceeded differently, he did not testify, and the record does not show, that the manner in which he represented appellant was "outside the wide

range of professionally competent assistance." Furthermore, counsel's testimony that, in hindsight, he might have, or would have, proceeded differently had he been aware of appellant's community supervision eligibility and if appellant had indicated they should take a different tack is too speculative to conclude counsel's actual acts and omissions were outside the wide range of professionally competent assistance. Accordingly, we conclude appellant has failed to meet the first prong of the *Strickland* test.

Even if counsel's actions were unreasonable, the record does not show a reasonable probability that the outcome would have been different. Counsel testified he would have informed the prospective jurors that a person convicted of manslaughter is eligible for community supervision, yet a person convicted of criminally negligent homicide with a deadly weapon is not eligible for community supervision, and he would have challenged for cause those prospective jurors who indicated they were unable to follow that law. His doing so could have made no difference to the outcome because the jurors in this case were unaware of the difference in community supervision eligibility between the two offenses when they determined appellant's guilt, so they had no bias against the law and still found appellant guilty of criminally negligent homicide. Counsel also testified he might have exercised his peremptory challenges differently based on the prospective jurors' answers to questions about the differences in eligibility for community supervision. However, counsel's testimony that he might have made different decisions based on answers never uttered to questions not posed does not meet the high level of prejudice necessary to establish ineffective assistance. Counsel also testified he would have presented different evidence about reckless versus negligent conduct; however, the jurors were instructed in the charge on the legal definitions of reckless and negligent conduct, and nothing shows a reasonable probability that they would have determined this issue differently.

Appellant appears to assert in his briefing that, had he been aware he was not eligible for community supervision if convicted of criminally negligent homicide with a deadly weapon, then he would not have requested a jury instruction on criminally negligent homicide and he would have objected to its submission. This assertion is not firmly founded in the record. Counsel testified that whether to oppose submission of criminally negligent homicide was something he would have considered had he been aware of appellant's ineligibility for community supervision for criminally negligent homicide with a deadly weapon, but counsel did not testify that he would have, in fact, opposed submission of the lesser included offense. Moreover, the State could have requested submission of criminally negligent homicide, or the trial court could have submitted the offense sua sponte, and because some evidence shows appellant was guilty only of criminally negligent homicide, it would not have been error for the trial court to submit the instruction, even over appellant's objection. *See Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App.1993). We conclude appellant has not shown a reasonable probability that criminally negligent homicide would not have been submitted to the jury had counsel been aware that appellant would not be eligible for community supervision if convicted of criminally negligent homicide with a deadly weapon.

Appellant also states in his brief, "The jury would have been composed differently and would have made a different decision regarding its guilty verdict had counsel been in the position to question the venire about the law putatively applicable to crim-

inally negligent homicide with a deadly weapon." This statement is speculative and is not firmly founded in the record.

Appellant relies on a series of cases where the trial court or trial counsel wrongly informed the defendant that the trial court could order community supervision when only the jury could recommend community supervision. *See Ex parte Canedo,* 818 S.W.2d 814, 815 (Tex.Crim. App.1991); *Sterry v. State,* 959 S.W.2d 249, 257–58 (Tex.App.-Dallas 1997, no pet.); *Medeiros v. State,* 733 S.W.2d 605, 607 (Tex.App.-San Antonio 1987, no pet.). In each of these cases, the incorrect information caused the defendants to waive their right to have the jury assess punishment. Thus, while otherwise eligible for community supervision recommended by a jury, the defendants' choice to have the judge set punishment eliminated community supervision as a punishment option. In this case, appellant could not receive community supervision for criminally negligent homicide with a deadly weapon from either the judge or jury. Accordingly, the cases cited by appellant are distinguishable.

Finally, the record does not show a reasonable probability that the jury would have recommended community supervision even if appellant had been convicted of manslaughter. Had the jury believed leniency, such as community supervision, was appropriate, it would have assessed appellant's punishment at or near the minimum of two years' imprisonment; instead, the jury assessed seven-and-a-half years' imprisonment.

We conclude the record does not show a reasonable probability that appellant would have been convicted of manslaughter instead of criminally negligent homicide with a deadly weapon had counsel been aware appellant was not eligible for community supervision if convicted of criminally negligent homicide with a dead-ly weapon. Accordingly, appellant has not met the prejudice prong of *Strickland.* We overrule appellant's second point of error.

We affirm the trial court's judgments.