**Opinion issued August 28, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-17-00367-CR

————————————

**JEFFREY N. KILLEBREW, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1437426**

## MEMORANDUM OPINION

A jury found appellant, Jeffrey N. Killebrew, guilty of criminally negligent homicide[1] and assessed his punishment at confinement for two years and a $3,000 fine. In two issues, appellant argues that the trial court erred in admitting into

---

[1]    *See* TEX. PENAL CODE ANN. § 19.05 (Vernon 2011).

evidence his statement, taken without the statutorily-required warnings,[2] and denying his request for an instruction on the defense of necessity in the jury charge.

We affirm.

## Background

Deputy Mike Nguyen, an accident investigator with the Harris County Sheriff's Office ("HCSO"), testified that in the afternoon of February 23, 2014, he was dispatched to an automobile/motorcycle collision on Franz Road in Katy, Texas. When he arrived, he saw a motorcycle and Frank Rodriguez, the "complainant," who was deceased, lying on the pavement in the eastbound lane. Appellant was the only witness to the collision. He initially told Nguyen that he had turned his car left from a westbound lane of Franz Road in order to enter into a private driveway across the road, and the collision "occurred" as he was bringing his car to a stop. However, Nguyen's investigation revealed that the damage to appellant's car was on the driver's side of the car, indicating that he, inconsistent with his statement, had been traveling the wrong way on Franz Road at the time of the collision.

Dr. Jennifer Ross, a medical examiner with the Harris County Institute of Forensic Sciences, testified that she performed an autopsy on the complainant's

---

[2] *See* TEX. CODE. CRIM. PROC. Art. 38.22 (Vernon 2018); *see also Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).

body. After reviewing all of the information in the case, she opined that his death was caused by "[m]ultiple blunt force injuries." Although he had several fractures and severe injuries all over his body, the "extensive skull fractures" and bleeding in his brain would likely have caused the complainant's death, even with medical intervention. Ross further noted that his injuries, as a whole, were consistent with being in a car collision.

Deputy Richard Sanders, an accident investigator with the HCSO, testified that on February 23, 2014, he was dispatched to investigate a confirmed-fatality collision on Franz Road in Katy, Texas. After he arrived at the scene around 4:00 p.m., Deputy Nguyen asked Sanders to speak with appellant. Appellant told Sanders that he was trying to turn his car into the "first driveway, the driveway accessible for westbound traffic," from the median and into a gas station. And appellant had almost come to a complete stop when he was struck by the complainant's motorcycle.

After this first "interview" with appellant, Sanders assisted other law enforcement officers in collecting evidence, taking statements, and conducting field sobriety tests, during which he determined that appellant was not impaired. The officers investigating the scene determined that the roadway evidence they had collected was inconsistent with appellant's first statement because it indicated that appellant had been driving his car the wrong way on Franz Road and into

3

oncoming traffic at the time of the collision. Sanders then interviewed appellant a second time.

At this point in Deputy Sanders's testimony, appellant's attorney objected and asked the trial court to suppress appellant's second statement on the ground that it had been taken during a custodial interrogation, without appellant having been given the statutorily-required warnings. During a hearing, outside the presence of the jury, Sanders testified that, at the scene, he had not placed appellant in handcuffs, arrested him, or charged him with criminally negligent homicide. And at no point did appellant indicate that he did not want to talk with Sanders. However, appellant did refuse to consent to a blood draw at the scene, and he "had been sitting in the backseat" of a law enforcement car for approximately two hours by the time he had given his second statement. After the completion of the second interview, appellant was free to, and did, leave the scene.

Deputy Sanders explained that even though there were inconsistencies between appellant's statements and the evidence collected at the scene, he did not, at that time, know whether appellant would be charged with an offense because, absent intoxication, "[w]ith a crash like this," law enforcement "always wait[s] for a reconstruction to be done" before determining whether to file charges. At the scene, there was probable cause to believe that a "[C]lassic C violation," such as failure to "yield" or traveling on the "wrong side of the road," had occurred. But

4

he did not necessarily suspect that appellant would be charged with criminally negligent homicide, and he did not know enough to charge appellant with any crime at the scene. Further, Sanders noted that appellant would not have been arrested had he refused to speak with him.

After considering Deputy Sanders's testimony and the arguments of counsel, the trial court denied appellant's motion to suppress his second statement. The trial court concluded that appellant was not in custody at the time he gave his second statement. Rather, the officer had temporarily detained him for an investigation and then released him after the investigation was complete.

After the jury returned, Deputy Sanders testified that appellant's second statement differed from his first because he, in his second statement, explained that, at the time of the collision, he was "attempting to get into a separate driveway" that would have required him to temporarily drive on the wrong side of Franz Road into oncoming traffic. Sanders also noted that a person turning a car left across a street has a duty to make sure that no one is coming from the opposite direction before commencing the turn.

Deputy David Pearson, an accident investigator and reconstructionist with HCSO, testified that on February 23, 2014, he was dispatched "to go out and take a look" at the scene of the collision that had occurred between a Pontiac Sunfire and Harley Davidson motorcycle on Franz Road in Katy, Texas. The damage to the

Pontiac Sunfire was primarily to the front left headlight and front left quarter panel. A little further rearward, Pearson noted some additional markings just below the hood of the car that "matched . . . some of the clothing that was worn by the complainant." On the right, front-side tire, there were fresh abrasions to the tire "on the edges of the rim . . . consistent with that tire and wheel rubbing up against concrete." Pearson later discovered, on the "edge of the curb of the median," a fresh black scuff mark that matched up with the Pontiac Sunfire's right-side tire and wheel damage. And Pearson explained that he used the "airbag control module" on appellant's car to determine that it was traveling at approximately thirty-one miles per hour at the time of the collision.

Given the evidence collected, Deputy Pearson opined that appellant had caused the collision by "driving in the wrong direction on the wrong side of the roadway and had failed to yield to this motorcycle that was traveling properly in the eastbound inside lane." He also opined that appellant's speed of thirty-one miles per hour at the time of the collision was "unsafe for traveling through a median, whether he's going across the roadway or the wrong way." Pearson further noted that there is no evidence in this case that the complainant "wobble[d]" or otherwise lacked control over his motorcycle before the collision.

Appellant testified that after buying a pizza on February 23, 2014, he, while driving his 2002 Pontiac Sunfire westbound on Franz Road, decided to stop at a

6

gas station to buy a "Dr. Pepper and a can of snuff." Intending to turn into the "first driveway" immediately across from the median, he "mov[ed] over to make a left-hand turn into the [gas station] parking lot." However, two cars "pulled out" into the driveway, blocking his way. Appellant then saw the complainant, who had his right hand on the handlebars and "his left hand . . . up towards his neck area," "wobble."

Upon seeing the complainant, appellant immediately "steered right" into oncoming traffic because he felt it was his only chance to "keep [the complainant] from hitting his car." According to appellant, if he had not steered right, the complainant would have collided with the right side of his car. After he steered right, the complainant "came in contact with [his] left fender." Appellant noted that, as he took his left turn, there was a sign blocking his view of the complainant coming in the opposite direction, although he did not notice the sign at the time. However, appellant also admitted that he did not stop his car before taking the left turn, despite having seen the two cars blocking the driveway that he was planning to enter.

During the charge conference, appellant requested that the trial court submit to the jury an instruction on the defense of necessity in its charge, which the trial court denied.

## Suppression of Statement

In his first issue, appellant argues that the trial court erred in denying his motion to suppress the second statement that he made to Deputy Sanders because it was the result of a custodial interrogation and Sanders did not give him the required statutory warnings. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon Supp. 2018); *see also Miranda v. Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).

We review a trial court's denial of a motion to suppress evidence under a bifurcated standard of review. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion and the trial court's application of the law to the facts de novo. *Id.* The trial court is the sole and exclusive trier of fact and judge of the witnesses' credibility and may choose to believe or disbelieve all or any part of the witnesses' testimony. *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). If the trial court does not file findings of fact, as here, we view the evidence in the light most favorable to the trial court's determination and assume that the trial court made

8

implicit findings of fact in support of its determination if those findings are supported by the record. *State v. Gray*, 158 S.W.3d 465, 467 (Tex. Crim. App. 2005) (quoting *Ross*, 32 S.W.3d at 855–56). We will uphold the trial court's determination if it is correct on any theory of law applicable to the case. *Valtierra*, 310 S.W.3d at 447–48.

The United States Constitution prohibits the use of statements made by a criminal defendant against himself if they are obtained through custodial interrogation without the necessary procedural safeguards to secure the Fifth Amendment right against self-incrimination. *Miranda*, 384 U.S. at 444; *Jones v. State*, 119 S.W.3d 766, 772 (Tex. Crim. App. 2003). Similarly, the Texas Code of Criminal Procedure precludes the State's use of the statements of a criminal defendant against himself obtained through a custodial interrogation without compliance with procedural safeguards. TEX. CODE CRIM. PROC. ANN. art. 38.22. Notably, however, an individual's Fifth Amendment rights do not come into play if the person is not in custody and any investigation is not yet custodial, and neither *Miranda* nor article 38.22 warnings are required before such questioning. *Herrera v. State,* 241 S.W.3d 520, 526 (Tex. Crim. App. 2007); *Melton v. State*, 790 S.W.2d 322, 326 (Tex. Crim. App. 1990); *White v. State*, 395 S.W.3d 828, 834 (Tex. App.—Fort Worth 2013, no pet.).

"Custody" for purposes of article 38.22 is consistent with the meaning of "custody" for purposes of *Miranda*. *Gardner v. State*, 433 S.W.3d 93, 98 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Herrera*, 241 S.W.3d at 526). The appropriate inquiry as to whether a person is in "custody," for purposes of his right to receive legal warnings, is "whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S. Ct. 3517, 3520 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 714 (1977)); *see also Gardner v. State*, 306 S.W.3d 274, 293–94 (Tex. Crim. App. 2009). A "custodial interrogation" is "'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom . . . in any significant way.'" *See Herrera*, 241 S.W.3d at 525 (quoting *Miranda*, 384 U.S. at 444, 86 S. Ct. at 1612). The determination of custody is made on a case-by-case basis considering all the surrounding circumstances. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). A person is in custody only if, under the circumstances, an objectively reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest. *Id.* at 254.

Generally, a suspect's detention may constitute custody for purposes of *Miranda* and article 38.22: (1) when an individual is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells

the person that he is not free to leave, (3) when a law enforcement officer creates a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, or (4) when there is probable cause to arrest the person and law enforcement officers do not tell the person that he is free to leave. *Id.* at 255. In the first three situations, the restriction upon freedom of movement must amount to the degree associated with an arrest rather than an investigative detention. *Id.* Under the fourth situation, the existence of probable cause must be manifested to the suspect. *Id.* Simply because an interrogation begins as "noncustodial" does not preclude custody from arising later if the conduct of law enforcement officers causes "a consensual inquiry to escalate into [a] custodial interrogation." *Id.* A defendant bears the burden at trial of proving that his statements were the product of a custodial interrogation. *Herrera*, 241 S.W.3d at 526.

Appellant argues that he made his second statement while he was in custody, implicating the first, third, and fourth situations discussed in *Dowthitt*, because "[a]ny reasonable person would believe being placed and held in a [patrol] car for two hours was a form of custody," he was not free to leave, and Deputy Sanders admitted that he had probable cause to arrest him.

Under the first and third situations discussed in *Dowthitt*, an investigative detention can evolve into custody if law enforcement officers physically deprive a

person of significant freedom of movement, or create a situation in which a reasonable person would believe that he is deprived of significant freedom of movement. *Dowthitt*, 931 S.W.2d at 255. To constitute custody in such a situation, the restriction upon the individual's freedom of movement must be to the degree associated with an arrest as opposed to an investigative detention. *See Melton*, 790 S.W.2d at 326; *Mount v. State*, 217 S.W.3d 716, 724 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Although both an investigative detention and an arrest involve a "restraint" of liberty, a noncustodial investigative detention does not implicate a person's Fifth Amendment rights against self-incrimination. *See Melton*, 790 S.W.2d at 326.

Whether a person is under arrest or merely subject to a temporary investigative detention is a matter of degree and depends upon the length of the detention; the amount of force employed by officers; whether the officers actually conduct an investigation and whether it is conducted at the original location or whether the individual is transported to another location; the officer's expressed intent and whether he told the person that he was under arrest or being detained for a temporary investigation; and other relevant factors. *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008).

Here, although appellant's freedom was restrained by being placed in the back of a patrol car for two hours, the "restriction" on his "freedom of movement"

12

did not reach "the degree associated with an arrest" as opposed to an "investigative detention." *State v. Saenz*, 411 S.W.3d 488, 496 (Tex. Crim. App. 2013); *see also*, *e.g., Ervin v. State*, 333 S.W.3d 187, 209 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (four-hour interrogation non-custodial considering surrounding circumstances). Appellant was temporarily detained while law enforcement officers conducted an investigation of a fatal car collision. He was not placed in handcuffs, the patrol car stayed at the scene of the collision, and appellant was free to, and did, leave after the completion of the second interview. *See Sheppard*, 271 S.W.3d at 289 ("That is precisely what *Terry* permits—a temporary detention, in which the person is not free to leave, while the police officer investigates whether a crime has been committed.").

As for the "fourth situation" discussed in *Dowthitt*, appellant merely argues that it applies because Deputy Sanders admitted that he had probable cause to arrest appellant. However, appellant does not assert, and there is no evidence in the record to suggest, that Sanders or any other law enforcement officer communicated this information to appellant. And while the manifestation of probable cause may trigger a finding of custody in "certain unusual situations," these conditions are not present in this case. *See State v. Stevenson*, 958 S.W.2d 824, 829 n.7 (Tex. Crim. App. 1997); *see also Dowthitt*, 931 S.W.2d at 255–57 (probable cause triggered finding of custody after very long interrogation where

13

suspect never unaccompanied and officers ignored his requests to see his wife). Moreover, probable cause concerns only one of the situations discussed in *Dowthitt*, and its existence alone does not establish custody. *Dowthitt*, 931 S.W.2d at 255–57 (fourth situation established where suspect made damaging admission supporting probable cause in addition to length of interrogation and existence of factors involving exercise of law enforcement control).

Given the totality of the circumstances and our deference to the trial court's determination of historical facts, the trial court could have concluded that there was not a manifestation of probable cause and appellant was not "in custody." Therefore, the trial court could have rationally concluded that a reasonable person in appellant's position would not have thought that he was under arrest and the statements made by appellant in his second interview were not the product of a custodial interrogation, triggering his rights under *Miranda* and article 38.22.

Accordingly, we hold that the trial court did not err in denying appellant's motion to suppress his second statement to law enforcement officers.

We overrule appellant's first issue.

### Jury Instruction

In his second issue, appellant argues that the trial court erred in denying his request for an instruction on the defense of necessity in the jury charge because "he

14

did in fact admit to actions that can be viewed as causing" the death of the complainant, "although he did not believe himself to be at fault."

We review complaints of jury-charge error under a two-step process, considering first whether error exists. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error does exist, we then review the record to determine whether the error caused sufficient harm to require reversal. *Wooten*, 400 S.W.3d at 606. If the defendant preserved error by timely objecting to the charge, an appellate court will reverse if the defendant demonstrates that he suffered some harm as a result of the error. *Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). If the defendant did not object at trial, we will reverse only if the error was so egregious and created such harm that the defendant did not receive a fair and impartial trial. *Id.* at 26.

Section 9.22 of the Texas Penal Code defines necessity as follows:

Conduct is justified if:

(1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm;

(2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct; and

(3) a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.

TEX. PENAL CODE ANN. § 9.22 (Vernon 2011). A person commits criminally negligent homicide if he "causes the death of an individual by criminal negligence." *Id.* § 19.05 (Vernon 2011). Criminal negligence is defined within the penal code as follows:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(d) (Vernon 2011).

Here, the State asserts that appellant was criminally negligent when he, without first stopping, took a high-speed left turn into oncoming traffic towards the entrance of a parking lot and collided with the complainant, causing his death. Appellant, however, asserts that he drove his car into oncoming traffic in order to avoid a collision. Thus, the basis for appellant's necessity defense is that he was justified in driving his car into oncoming traffic. This constitutes an alternative theory of what occurred, raising an issue as to whether appellant was criminally negligent, i.e., he consciously disregarded a substantial and unjustifiable risk by his actions. However, when "unjustifiable" is an element of an offense, a defendant cannot raise the defense of necessity. *Chavers v. State*, 991 S.W.2d 457, 459–60 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); *see also Goodrich v. State*, 156

16

S.W.3d 141, 147 (Tex. App.—Dallas 2005, pet. ref'd) (no error in not submitting requested necessity defense instruction to jury because "unjustifiable" element of submitted offense of criminally negligent homicide). And the "denial of a defendant's requested instruction is not error when the requested instruction is only an affirmative submission of a defensive issue which merely denies the existence of an essential element of the State's case." *Chavers*, 991 S.W.2d at 460

Accordingly, we hold that the trial court did not err in refusing to submit an instruction to the jury on the defensive theory of necessity. *See Chavers*, 991 S.W.2d at 460; *Goodrich*, 156 S.W.3d at 147.

We overrule appellant's second issue.

### Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).