

# NUMBER 13-13-00002-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MELVIN ALEJANDRO CASTILLO,**                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                    **Appellee.**

---

### On appeal from the 92nd District Court
### of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Perkes
### Memorandum Opinion by Justice Rodriguez

Appellant Melvin Alejandro Castillo was charged by indictment with five felony offenses: four charges of aggravated assault with a deadly weapon and one charge of intoxicated assault. *See* TEX. PENAL CODE ANN. §§ 22.02(a), 49.07 (West 2011). After pleading not guilty, a jury convicted Castillo of each charged offense. After a punishment hearing, the trial court sentenced Castillo to eleven years' imprisonment for each of the

aggravated assault convictions and ten years' imprisonment for the intoxicated assault conviction, with the sentences to run concurrently.

By seven issues, Castillo contends that: (1–3) the evidence was insufficient to support his convictions; (4–5) the State's closing arguments were improper; (6) his conviction for aggravated assault and his conviction for intoxication assault involving the same victim constituted double jeopardy; and (7) he was denied due process and a fair and impartial trial due to the cumulative effect of trial errors. We affirm, as modified.

## I. BACKGROUND[1]

This case involves a traffic accident that occurred on November 27, 2011, on U.S. Highway 281 in Hidalgo County, Texas. Roberto Rodriguez Jr. (Roberto), the driver of a blue Chevrolet Impala, provided the following testimony:

> I was on the far right lane and saw the vehicle on my far left lane. . . . I saw it veering off to the middle lane which I thought that's where he was going to pass me. And he kept on to my lane and it was unavoidable. He veered off and that's when he hit me into my lane. . . . I want to say [I was traveling] about 55 or 60. I had just entered the expressway. . . . It was a white vehicle.

Roberto agreed that it was a "very hard" impact. He remembered spinning and coming to a stop "on the other side of the median." According to Roberto, the other car "kept going." Roberto identified the passengers in his vehicle as Rocio Sanchez; Guadalupe Martinez, his stepmother; and Aziria Rodriguez (Aziria), his fourteen-year-old sister.

Officer Efrain Muniz, who was one of the first officers to arrive at the scene of the collision, testified that fire department personnel extricated the back seat passengers,

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

Martinez and Aziria, from the car and that an ambulance transported all four occupants to the hospital for medical treatment.[2]   According to Officer Muniz, Roberto told him that he saw a white vehicle approaching from the rear at a high rate of speed, the car struck him, and then continued north.   Officer Muniz testified that there were skid marks and gravel where the white car left the road.   Officer David Boyd, who was dispatched to the accident site, testified that he located an unoccupied white Chevrolet Impala a mile and a half north of the accident site.   He stated that the vehicle had severe front-end damage.

Wendell Herndon, a truck driver, testified that he saw the driver of a white Impala driving erratically on the road, almost sideswiping his trailer.   He described the driving as "[v]ery[,] very swerving, erratic and speeding."   According to Herndon, after the white Impala passed him, it "was just like all over the road."   Herndon noticed that the vehicle had "front end damage."   He saw "one silhouette [in the vehicle] at the time."   According to Herndon, "[the driver of the white Impala] lost control of the car . . . .   [H]e went off the highway down in between the get-on ramp at that exit . . . over the ramp into the ditch and back on to the shoulder where the car came to a rest."   Herndon stopped his truck behind the white Impala, and the driver exited the driver's door, "came back to [Herndon's] truck," and asked Herndon "for a ride out of there."   Herndon testified that when the man's request was refused, he "got frustrated and kind of took off walking . . . north in the ditch until [he] disappeared."   Herndon identified Castillo as the person who was driving the white Impala that morning.

Sergeant Marivel Silva testified that she arrived at the scene of the accident and

---

[2] The testimony reveals that Roberto had a bump on the back of his head and lower back; Sanchez had a herniated disk; Martinez had a broken nose, fractured ribs, a punctured lung, spine injuries, and multiple bruising and fractures of her face and arms; and Aziria had multiple facial fractures, a broken nose, broken teeth, a dislocated hip, and a broken leg.

observed that the entire back end of the blue car had been damaged. She headed north in search of a white four-door car and, a mile from the accident, located Officer Boyd with a truck driver. The white car "was off to the side of the shoulder of the road." After being told that a male had exited the vehicle, she and Officer Javier Reynero searched both sides of the roadway. According to Sergeant Silva, she found a male, whom she identified as Castillo, lying in an open field. Sergeant Silva testified that as she approached him, Castillo tried to get up, possibly to get away, but lost his balance and fell as she reached him. Castillo had facial abrasions. He also had slurred speech" and "a very strong odor of alcohol emitting from his breath." Sergeant Silva agreed that Castillo was exhibiting signs of intoxication "[b]ased on him falling, his speech, his bloodshot eyes and the odor of alcohol emitting from his breath." Officer Reynero also testified that Castillo "had slurred speech and "sounded like he was drunk." He agreed that Castillo seemed confused, which is typical for someone who is extremely intoxicated.

After Castillo was placed under arrest, he informed Sergeant Silva that he had been in a fight in McAllen where he had injured his eye and that he was walking home from downtown McAllen, which was more than ten miles from that location. Officer Reynero testified that while being transported to the hospital for treatment, Castillo told him "to give him a chance . . . that he had four kids . . . and to take him home or just to let him go. . . . He did say that he was sorry and that he had made a mistake." On cross-examination, Officer Reynero also testified that Castillo told him, on two occasions, that he was not driving.

The white Impala involved in the collision was registered to Castillo's sister and another person. According to Castillo's mother, Castillo had taken the vehicle the

4

evening before to go to a party. At trial, Castillo did not dispute that he had been drinking, but he did argue that another person had given him a ride home from a barbeque.

Castillo was charged by indictment on five felony charges arising from this automobile accident. Counts one, three, four, and five were for aggravated assault of the driver and each passenger in the blue Impala. Count two was for intoxicated assault of one of the passengers. A jury found Castillo guilty of each offense charged. After a punishment hearing before the bench, the trial court sentenced Castillo to eleven years' imprisonment for each of the four aggravated assault counts and to ten years' imprisonment for the intoxicated assault count. The trial court ordered the sentences to run concurrently. Castillo filed a motion for new trial and a supplemental motion for new trial, both of which the trial court denied by written order. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE TO SUPPORT AGGRAVATED ASSAULT CONVICTIONS

By his first two issues, Castillo contends that the evidence was insufficient to support his convictions for aggravated assault. He specifically challenges the sufficiency of the evidence to establish (1) that he drove recklessly and (2) that he caused the resulting injuries.[3]

### A. Applicable Law and Standard of Review

"The standard for determining whether the evidence is legally sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

---

[3] Castillo does not challenge the sufficiency of the evidence to establish that he was the driver of the car that struck the blue Impala, that he was intoxicated, or that the occupants of the other vehicle sustained serious injuries as a result of the collision.

5

beyond a reasonable doubt.'" *Johnson v. State,* 364 S.W.3d 292, 293–94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)); *see Brooks v. State,* 323 S.W.3d 893, 898–99 (Tex. Crim. App. 2010). The fact-finder is the exclusive judge of the credibility of witnesses and of the weight to be given to their testimony. *See Jackson*, 443 U.S. at 326; *Anderson v. State,* 322 S.W.3d 401, 405 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (citing *Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008)).

We measure the sufficiency of the evidence against the hypothetically correct jury charge. *Cada v. State*, 334 S.W.3d 766, 773 (Tex. Crim. App. 2011) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) (en banc)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Villarreal v. State,* 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). Under the law as authorized by the indictment in this case, a person is guilty of aggravated assault if he commits an assault which causes serious bodily injury to another or uses or exhibits a deadly weapon during the commission of the assault.[4] *See* TEX. PENAL CODE ANN. § 22.02(a); *see also id.* § 22.01(a)(1) ("A person commits [assault] if the person . . . intentionally, knowingly, or recklessly causes bodily injury to another . . . ."). The penal code defines the culpable mental state of recklessness as follows:

> A person acts recklessly, or is reckless, with respect . . . to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the . . . result will occur. The risk must be of such

---

[4] Each indictment alleged that Castillo used or exhibited "a deadly weapon, to-wit: a motor vehicle."

a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

*Id.* § 6.03(c) (West 2011).

## B. Was the Evidence Sufficient to Show that Castillo Acted Recklessly?

Castillo claims, in his first issue, that there was no evidence to establish that he acted, at least, recklessly. He asserts that he did not act recklessly in any of the following ways alleged in the indictment: (1) by driving a motor vehicle at an excessive speed; (2) by failing to control his motor vehicle; or (3) by failing to keep a proper lookout for another motor vehicle.

### 1. Excessive Speed

As one alternative, the jury was authorized to convict Castillo if the jury found he recklessly caused the resulting injuries by operating his motor vehicle at an excessive speed. Castillo contends that Roberto's testimony that Castillo's vehicle was traveling at a high rate of speed in no way supports a finding that Castillo was reckless. No one asked Roberto what he meant by a "high rate of speed," and there was no testimony that Castillo was traveling above the posted speed limit on the highway. Castillo argues that Roberto's perception that he was traveling at a high rate of speed could have been distorted considering that Roberto was likely traveling slow while entering the highway.

Although there was no testimony presented establishing the actual or probable speed at which Castillo was driving at the time of impact, Roberto, the driver of the vehicle that was struck, testified that he "was heading northbound on 281" and "noticed in [his] rear view a vehicle coming very fast." And Roberto's undisputed trial testimony established that Roberto was travelling at least fifty-five miles per hour when struck from

7

behind with great force.   The impact sent Roberto's vehicle spinning, coming to a stop after several revolutions.   The collision sent all of the occupants of the blue Impala to the hospital.   The entire back end of the blue Impala had damage, and the front end of the white Impala had severe damage.[5]   From this evidence, a rational jury could have determined that Castillo acted reckless by driving at an excessive rate of speed.   *See Johnson,* 364 S.W.3d at 293–94; *Brooks,* 323 S.W.3d at 898–99; *see also* TEX. PENAL CODE ANN. §§ 6.03(c), 22.02(a); *Ashorali v. State*, No. 05-06-01476-CR, 2008 WL 726202, at *7 (Tex. App.—Dallas Mar. 19, 2008, pet. ref'd) (not designated for publication) (noting that the extent of damage to the vehicles was probative as to whether excessive speed was a causative factor in the automobile collision and concluding that "[s]evere impact damage to both cars likewise showed excessive speed as a factor in the accident").

In addition, although Roberto's car immediately spun several times before coming to a stop following the collision, Castillo left the scene in his car and then on foot.   Such conduct demonstrates consciousness of guilt and supports a determination that Castillo knew his conduct was reckless.   *See Bigby v. State*, 892 S.W.2d 864, 883 (Tex. Crim. App. 1994) (en banc) (explaining that evidence of flight is a circumstance from which jury can infer guilt); *Rumbaugh v. State*, 629 S.W.2d 747, 753 (Tex. Crim. App. 1982) (en banc) (same); *see also* TEX. PENAL CODE ANN. § 6.03(c); *Ashorali*, 2008 WL 726202, at *7.

---

[5] And even had Castillo been traveling within the posted speed limit and Roberto been traveling slowly as he entered the highway, Texas law provides:

> An operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway.

TEX. TRANSP. CODE ANN. § 545.062(a) (West 2011).

## 2. Failure to Control Motor Vehicle or Failure to Keep Proper Lookout

As second and third alternatives, the jury was authorized to convict Castillo if it found he recklessly caused the resulting injuries by failing to control his vehicle or failing to keep a proper lookout. Castillo argues that the evidence only shows that he struck Roberto's vehicle from behind and "does not automatically translate into recklessness by Castillo." He asserts that there was no evidence of road or weather conditions or whether he should have seen Roberto's car in time to avoid a collision. Yet the following cross-examination testimony of Officer Muniz related to weather conditions:

> Q. Can you describe, Officer, the weather conditions on November 27 at 5:53 a.m.?
>
> A. It was cold that morning.
>
> Q. Was it foggy?
>
> A: I don't recall it being foggy.
>
> Q. Was it raining?
>
> A. It was not raining.

There was also testimony by Roberto that he was traveling in the right hand lane going at least fifty-five miles per hour just prior to the collision. Roberto saw Castillo's vehicle approaching from behind in the far, left-hand lane of the expressway. According to Roberto, Castillo's vehicle then moved to the middle lane and then into the right lane before it hit Roberto's vehicle. From this evidence, a rational jury could have found, even if the excessive-speed allegation as a manner and means of recklessness is set aside, that Castillo failed to control his vehicle, failed to maintain a proper lookout for other vehicles, or both. *See Johnson,* 364 S.W.3d at 293–94; *Brooks,* 323 S.W.3d at 898–99; *see also* TEX. PENAL CODE ANN. §§ 6.03(c), 22.02(a).

9

Also, as noted above, Castillo's flight from the accident is evidence as to consciousness of guilt. *See Bigby*, 892 S.W.2d at 883; *Rumbaugh*, 629 S.W.2d at 753; *see also Ashorali*, 2008 WL 726202, at *7. Finally, another indicator of Castillo's awareness as to the wrongful nature of his actions was his changing version of the events of that particular night. *See* TEX. PENAL CODE ANN. § 6.03(c); *Couchman v. State*, 3 S.W.3d 155, 163–64 (Tex. App.—Fort Worth 1993, pet. ref'd); *see also Richmond v. State*, No. 13-10-00349-CR, 2012 WL 3265088, *6 (Tex. App.—Corpus Christi Aug. 9, 2012, pet. ref'd) (mem. op., not designated for publication). Castillo first explained to the officers that he had injured his eye in a fight in McAllen, Texas, and that he was walking home from downtown McAllen, a distance of more than ten miles. On the way to the hospital, he asked the officers "to give him a chance" and explained "that he was sorry and that he had made a mistake." Castillo also told the officers that he had not been driving the car and, at trial, argued that another person was driving the white Impala and that he had been a passenger at the time of the collision as they were en route to his home. From Castillo's changing story about the crime and surrounding circumstances, the jury may have inferred a consciousness of guilt. *See* TEX. PENAL CODE ANN. § 6.03(c).

### 3. Summary

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have found that Castillo acted recklessly. *See Johnson*, 364 S.W.3d at 293–94; *Brooks*, 323 S.W.3d at 898–99. The evidence was sufficient to establish the culpable mental state of recklessness. *See* TEX. PENAL CODE ANN. § 6.03(c). "Reaching any other conclusion would require us to substantially intrude upon the jury's

role as the sole judge of the weight and credibility of the evidence, which we must not do."

*Goodrich v. State*, 156 S.W.3d 141, 147 (Tex. App.—Dallas 2005, pet. ref'd); *see Jackson*, 443 U.S. at 326; *Anderson,* 322 S.W.3d at 405 (citing *Lancon,* 253 S.W.3d at 707).   We overrule Castillo's first issue.

**C.     Was the Evidence Sufficient to Show that Castillo's Recklessness in the Operation of his Vehicle Caused the Collision and Resulting Injuries?**

In his second issue, Castillo contends that the evidence was insufficient to establish that his reckless conduct caused the accident and the resulting injuries. Castillo claims that the State proved only that there was a rear end collision and not that the accident would not have occurred but for his recklessness.   *See* TEX. PENAL CODE ANN. § 6.04(a) (West 2011) (providing that a person is criminally responsible if the result would not have occurred "but for his conduct").   He contends, instead, that a concurrent cause was clearly sufficient to produce the result and that his conduct was clearly insufficient.   *See id.* (exempting a person from criminal responsibility if a "concurrent cause was clearly sufficient to produce the result and the conduct of the [person] clearly insufficient").   We disagree.

The Texas Penal Code provides that "[a] person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient."   *Id*.; *see Robbins v. State*, 717 S.W.2d 348, 351 (Tex. Crim. App. 1986) (en banc).   "If concurrent causes are present, two possible conditions exist to satisfy the 'but for' requirement: (1) the defendant's conduct may be sufficient by itself to have caused the harm, regardless of the existence of a concurrent cause; or (2) the defendant's conduct and the other cause together may be

11

sufficient to have caused the harm." *Robbins*, 717 S.W.2d at 351. But if the additional cause, other than the defendant's conduct, is clearly sufficient, by itself, to produce the result and the defendant's conduct, by itself, is clearly insufficient, a defendant cannot be convicted. *Id.*

In this case, Castillo claims there were factors other than his recklessness which, standing alone, were sufficient to cause serious injuries to the occupants of the other vehicle. Castillo asserts that Roberto's actions entering the highway "carelessly, slowly, and without a proper lookout" caused the accident.[6] However, there is no support for Castillo's contention. In fact, as set out above, Roberto testified that he observed Castillo driving fast behind him in the far left lane. If Castillo had stayed in the left lane and not traveled through the middle lane and into the right lane, he would not have struck the blue Impala. *See, e.g., Hale v. State*, 194 S.W.3d 39, 42–44 (Tex. App.—Texarkana 2006, no pet.) (finding that the act of stopping a vehicle in the roadway was not the sole cause of the collision such that the defendant, driving the vehicle that struck the stopped automobile, could escape criminal liability); *Westbrook v. State*, 697 S.W.2d 791, 792–93 (Tex. App.—Dallas 1985, pet. ref'd) (reasoning in a charge issue that even if the jury found the collision was caused by Bromberg changing lanes, that fact would not have established that the collision was not also caused concurrently by Westbrook's driving at a high rate of speed, his own change of lanes, or his driving while intoxicated).

Therefore, even had Roberto been driving, carelessly, too slowly, or without a proper lookout, Roberto's conduct and Castillo's conduct together were sufficient to have

---

[6] Without citing supporting authority, Castillo contends that Texas law dictates that a vehicle entering a highway should yield to vehicles already traveling on the highway. *See* TEX. R. APP. P. 38.1(i) (explaining that the appellant's brief must contain a clear and concise argument, including appropriate citations to authority and the record).

caused harm and that satisfies the "but for" requirement establishing causation in this case. *See Robbins*, 717 S.W.2d at 351. In addition, we cannot conclude, as Castillo argues, that the evidence established that Roberto's conduct was clearly sufficient, by itself, to produce the result and that Castillo's conduct, by itself, was clearly insufficient. *See id.*

In sum, a fact-finder could reasonably have found that, "but for" Castillo's reckless driving, the injuries would not have occurred. *See* TEX. PENAL CODE ANN. §§ 6.03(c), 22.02(a); *Wooten*, 267 S.W.3d at 296. So viewing the evidence in the light most favorable to the verdict, we conclude the evidence was sufficient to establish causation. A rational trier of fact could have found the causation element of aggravated assault beyond a reasonable doubt. *See Brooks*, 323 S.W.3d at 898–99; *Wooten*, 267 S.W.3d at 297. We overrule Castillo's second issue.[7]

### III. CLOSING ARGUMENTS

By his fourth issue, Castillo contends that the State made an improper jury argument during the guilt-innocence stage of the proceeding that was a highly emotional and prejudicial attack on Castillo and his attorney and that condemned Castillo for not accepting responsibility in this case. He urges that this was a calculated attempt to inflame the jurors and prejudice Castillo.

By his fifth issue, Castillo asserts that the State made an improper closing argument to the court during the punishment phase. He contends that the State personally attacked him and condemned him for exercising his right to a jury trial.

---

[7] By his third issue, Castillo argues that the evidence was insufficient to support his conviction for intoxication assault; specifically, that the evidence was insufficient to show a causal link between his intoxication and the resulting injuries. But having sustained his sixth issue below, we need not determine this sufficiency challenge, as it is not dispositive of this appeal. *See* TEX. R. APP. P. 47.1.

13

Castillo claims that the State also requested a harsher punishment because he did not plead guilty and injected testimony of extraneous acts not properly admitted as evidence.

However, Castillo did not object to the State's arguments about which he now complains. Failure to object to jury argument at trial forfeits the right to raise the issue on appeal. TEX. R. APP. P. 33.1; *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004) (en banc); *see Simpson v. State*, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003) (finding waiver of any error in prosecutor's statement of personal opinion in jury argument); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996) (en banc). Because he did not object to the complained-of arguments, Castillo has waived error. *See* TEX. R. APP. P. 33.1; *Threadgill*, 146 S.W.3d at 667, 670. We overrule the fourth and fifth issues.

## IV.    DOUBLE JEOPARDY

In his sixth issue, Castillo complains that his constitutional rights, specifically his double-jeopardy protections, under the Fifth Amendment, *see* U.S. CONST. AMEND. V, were violated when he was convicted of both intoxication assault (Count Two) and aggravated assault (Count Five) involving the same person, Aziria Rodriguez. The State concedes, and we agree, that, in this case, aggravated assault and intoxication assault are the same offense for double jeopardy purposes because they involve the same victim.

In *Ex parte Ervin*, the court of criminal appeals addressed the issue of whether convictions of intoxication manslaughter and manslaughter arising out of the same traffic accident and involving a single victim violated the Fifth Amendment's protection against double jeopardy. *See* 991 S.W.2d 804, 817 (Tex. Crim. App. 1999). The court

concluded "that manslaughter and intoxication manslaughter are the same offense for double jeopardy purposes when they involve the same victim, and imposing convictions for both in this situation violates the Double Jeopardy Clause. A double jeopardy violation occurs even when, as in this case, the sentences are concurrent." *Id.* The Fort Worth Court of Appeals subsequently held that intoxication assault and aggravated assault are also the same offense for double jeopardy purposes when they involve the same victim. *See Burke v. State*, 6 S.W.3d 312, 316 (Tex. App.—Fort Worth 1999), *vacated on other grounds*, 28 S.W.3d 545 (Tex. Crim. App. 2000); *see also Sylva v. State*, No. 13-01-139-CR, 2004 WL 42370, *2 (Tex. App.—Corpus Christi Jan. 8, 2004, pet. ref'd) (not designated for publication). Following the analysis of these cases, we conclude that intoxication assault and aggravated assault in a case involving the same accident and the same victim are the same offense for double jeopardy purposes.

When, in a single criminal action, a defendant is convicted of two offenses that are the same for double jeopardy purposes, the remedy is to vacate one of the convictions. *See Landers v. State*, 957 S.W.2d 558, 559 (Tex. Crim. App.1997) (en banc); *see also Moreno v. State*, 1 S.W.3d 846, 864 (Tex. App.—Corpus Christi 1999, pet. ref'd); *Sylva*, 2004 WL 42370, at *2. So we must now determine which conviction to vacate and which to retain.

"The Supreme Court has directed that when a defendant is convicted in a single criminal action of two offenses that are the 'same' for double jeopardy purposes, the remedy is to vacate one of the convictions." *Landers v. State*, 957 S.W.2d 558, 559 (Tex. Crim. App. 1997), *overruled on other grounds by Ex parte Cavazos*, 203 S.W.3d 333, 338 (Tex. Crim. App. 2006) (citing *Ball v. United States*, 470 U.S. 856, 864–65

15

(1985)). In making that determination, we retain the conviction for the "most serious" offense and set aside the other conviction. *Ex parte Cavazos*, 203 S.W.3d at 337; *see also In re D.X.S.*, No. 13-12-00446-CV, 2013 WL 5522722, *4 (Tex. App.—Corpus Christi Oct. 3, 2013, pet. filed on other grounds). "[T]he 'most serious' offense is the offense of conviction for which the greatest sentence was assessed." *Ex parte Cavazos*, 203 S.W.3d at 338.

Of the two offenses in this case, the most serious offense is aggravated assault for which Castillo was sentenced to eleven years in prison. *See id.* Accordingly, we sustain Castillo's sixth issue, and we will vacate his conviction for intoxication assault (Count Two) and its ten-year sentence and retain his conviction for aggravated assault (Count Five) involving the same person, Aziria Rodriguez, and its eleven-year sentence.

## V. CUMULATIVE ERROR

By his seventh issue, Castillo argues that the cumulative effect of the errors in the trial court or a combination of any of these errors denied him due process and a fair and impartial trial. Finding no error, we overruled Castillo's first, second, fourth, and fifth issues. We further resolved his sixth issue by sustaining it and vacating the judgment and sentence for intoxication assault. And because we vacated the intoxication assault conviction, we did not address his third issue, which challenged the sufficiency of the evidence to support that conviction. We are aware of no authority holding that non-errors or resolved errors may in their cumulative effect cause error. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (en banc); *see also Hughes v. State*, 24 S.W.3d 833, 844 (Tex. Crim. App. 2000); *Brown v. State*, No. 13-11-00640-CR, 2013 WL 4769382, at *5 (Tex. App.—Corpus Christi Sept. 5, 2013, no

16

pet.) (mem. op., not designated for publication). We overrule Castillo's seventh issue.

## VI. CONCLUSION

We vacate the intoxication assault conviction on double jeopardy grounds. As modified, we affirm the trial court's judgment. *See* TEX. R. APP. P. 43.2.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 13th
day of February, 2014.

17